AO 91 (rev.11/11) Criminal Complaint                    AUTHORIZED AND APPROVED DATE: _____

# United States District Court

## for the

_____ WESTERN _____                    DISTRICT OF _____ OKLAHOMA _____

FILED

APR 1 4 2021

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY _____ ,DEPUTY

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| Miles Sterling Bench, | ) |

Case No: M - 21 - 228 - P

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 6, 2012 in the county of Stephens, in the Western District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1201(a)(1) and (2) | Kidnapping resulting in death |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Sarah King, Federal Bureau of Investigation, which is incorporated and made a part hereof by reference.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Sarah King
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: April 14, 2021

City and State: Oklahoma City, Oklahoma

_____
*Judge's signature*

Gary M. Purcell, U.S . Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Sarah King, a Special Agent of the Federal Bureau of Investigation (FBI),

Oklahoma City Division, being duly sworn, state:

### AFFIANT'S EXPERIENCE

1.  I have been employed as a Special Agent (SA) with the FBI since 2017.

Throughout my employment as an FBI agent, my duties have included investigations of

white-collar crimes, civil rights violations, violent crimes against children, and Indian

country crimes.

### PURPOSE OF AFFIDAVIT

2.    This Affidavit is submitted in support of a warrant for the arrest of **Miles**

**Sterling Bench** (**Bench**) for the following offense: kidnapping resulting in the death of

B.H. (a minor child), in violation of Title 18, United States Code, Section 1201(a)(1) and

(2).  Since this Affidavit is being submitted for the limited purpose of securing a criminal

complaint and an arrest warrant, I have not included each and every fact known to me

concerning this investigation.  I have set forth only the facts that I believe are necessary to

establish probable cause to support the issuance of a criminal complaint and an arrest

warrant.

### PROBABLE CAUSE

3.  I am aware of the information set forth below through conversations with other

law enforcement officers, review of reports and affidavits prepared by other law

enforcement officers, and review of documents from related state court proceedings. This case was originally investigated by the Stephens County Sheriff's Office (SCSO), the Stephens County District Attorney's Office (SCDAO), and other state agencies. This Court has jurisdiction pursuant to Title 18, United States Code, Section 1201(a)(1) because **Bench** used an instrumentality of interstate commerce—specifically a 2009 Chevrolet Malibu—in committing or in furtherance of the commission of the offense. Additionally, this Court has jurisdiction pursuant to Title 18, United States Code, Sections 1153 and 1201(a)(2), because **Bench** has Indian blood and was an enrolled member of the Choctaw Nation, a federally recognized Indian tribe, at the time of the offense; and the offense occurred in Stephens County, Oklahoma, within the boundaries of the Chickasaw Nation in the Western District of Oklahoma.

4. On or about June 6, 2012, at approximately 8:15 p.m., law enforcement officers responded to the Teepee Totem convenience store in the city of Velma, Stephens County, Oklahoma. The store is within the boundaries of the Chickasaw Nation in the Western District of Oklahoma. A store patron discovered a pool of blood in the storeroom and that the store was left unattended. Law enforcement learned that the store's clerk, **Bench**, a 21-year-old man, should have been on duty but was missing at the time. **Bench** had been an employee for approximately three weeks and had begun to close the store by himself. **Bench** lived outside of town with his grandparents.

5. **Bench's** cousin regularly drove **Bench** to work. **Bench's** cousin told law enforcement that on the date of the incident, he had dropped **Bench** off at the Teepee Totem

2

before 2:00 p.m.  During the drive to the store, **Bench** said he planned to go to California so he could train to be a mixed martial arts (MMA) fighter.

6.  The SCSO deputies went to **Bench's** grandparent's home for a welfare check. The home is located within the boundaries of the Chickasaw Nation in the Western District of Oklahoma.  **Bench's** grandfather informed law enforcement officers that **Bench** had come into the residence, grabbed some clothes, and left on foot recently.

7.  At approximately 10:30 p.m., law enforcement officers discovered a deceased girl in a pasture on **Bench's** grandparent's land.  She was nude from her breast down, with her shirt pulled up partially covering her face.  Her face, shirt and hair were bloody.  She was later identified to be a 16-year-old girl whose initials are B.H.  Investigators learned that the Velma Police Department had been contacted by B.H.'s mother because B.H. had not returned home from an errand.  B.H. had driven into Velma around 7:30 p.m. to get an item from the grocery store for her mother.  B.H. then went into the Teepee Totem for some candy and a soda fountain drink.  According to B.H.'s mother, B.H. was supposed to return home by 8:00 p.m.

8.  Investigators notified other law enforcement officials to be on the lookout for B.H.'s 2009 Chevrolet Malibu.  On June 7, 2012 at approximately 1:45 a.m., a Custer County Sheriff's Office (CSCO) deputy stopped B.H.'s car while it was heading west on Interstate 40.  **Bench** was the driver and sole occupant.  Upon approaching the vehicle, the deputy observed a large amount of blood in the driver's side backseat of the vehicle.  As **Bench** exited the car, the deputy observed blood on **Bench's** clothing.  He spontaneously

3

told the officers, "I think I fucked up; I may have killed somebody." Law enforcement took **Bench** into custody and transported him to the Custer County Jail.

9.   While being processed into the Custer County Jail, law enforcement officials observed that **Bench** had blood on his shirt and socks. There was a mixture of blood and dirt on his shoes. He also had dirt on his face and shoulders of his shirt. **Bench's** hands were red and swollen. **Bench** also had a bite mark on his elbow. During his time at Custer County Jail, **Bench** made several spontaneous statements including telling officers that he thought he had murdered someone. He also told officers that he thought Stephens County would be coming to get him.

10.   **Bench** was later evaluated by a mental health expert. **Bench** told the mental health expert that he attacked B.H. while she was filing a cup at the soda fountain in the Teepee Totem. He said he had struck B.H. and took her to the ground. He said he then proceeded to strangle her with a choke hold and dragged her into the store's stockroom. Although B.H. fought back, **Bench** repeatedly beat her on her head, face, neck, and chest. He then dragged B.H. across the room and continued to stomp her head, neck, arm, and upper back. He put a sack on B.H.'s head, placed her inside a shopping cart, covered her with boxes, and pushed the shopping cart to B.H.'s car. He then placed her in the driver's side backseat of the vehicle. He returned to the store where he gathered items such as peanut butter, sunflower seeds, a toothbrush, rubbing alcohol, and razors from the store's shelves. He put those items in the B.H.'s vehicle.

11.   **Bench** then drove to a semi-secluded pasture on his grandparents' land and removed B.H. from the car. He dragged B.H. to a muddy spot. There, he completely

4

undressed B.H. from the waist down.  He pulled her jacket, tank-top and sports bra up to expose her breasts.

12. **Bench** continued to his grandparent's home where he put a clean shirt on top of the shirt he was wearing.  He also gathered additional items including boots, clothing, hydrogen peroxide, and his wallet.  When his grandfather recognized it was too early for **Bench** to be home from work, he asked him if he had quit or been fired.  **Bench** simply replied, "Yes."  **Bench** told his grandfather he was leaving and went outside and washed himself in a water spigot. He told his grandfather he loved him. His grandfather then told **Bench**, "be careful out there, don't get hurt."  **Bench** said, "OK," and left.

13. The Oklahoma Office of the Chief Medical Examiner determined the cause of B.H.'s death was blunt force trauma to her head and neck.  The Medical Examiner (ME) could not determine exactly when B.H. became unconscious.  However, the ME opined that her injuries were consistent with her having been alive at the time she was dragged across the floor of the Teepee Totem.  The ME also determined that B.H. had breathed in some of her own blood.  The ME opined that the blood on **Bench's** face was consistent with B.H. having coughed out blood from her nose and mouth onto **Bench**.

14. Based upon my training and experience, and the facts and circumstances described above, I believe probable cause exists to support a criminal complaint and arrest warrant for **Miles Sterling Bench** for kidnapping resulting in death in violation of Title 18, United States Code, Section 1201(a)(1) and (2).

Further Your Affiant sayeth not.

SARAH KING
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this the ___14th___ day of April 2021, at Oklahoma City, Oklahoma.

GARY M. PURCELL
United States Magistrate Judge

6